## STATE v. HALL.

No. 7079.   Decided November 24, 1947.   (186 P. 2d 970.)

See 23 C. J. S., Criminal Law, sec. 1325.   53 Am. Jur. 483.

*D. H. Oliver,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., *A. John Brennan,* Deputy Atty. Gen., and *Brigham E. Roberts,* Dist. Atty., of Salt Lake City, for respondent.

PRATT, Justice.

Appellant Jack Hall, defendant Leo Harris, and defendant Ann Braxton, were charged jointly with having committed the crime of grand larceny by stealing a ring of over $50 in value from the Jensen Jewelry store. Harris pleaded guilty; Braxton and Hall were each found guilty upon trial; and Hall appeals his case.

Harris took the witness stand after he had entered a plea of guilty, and testified in substance and effect that Hall knew all about the scheme to switch rings. The court did not instruct upon the law applicable to an accomplice's testimony.

In general the testimony is as follows:

The three entered the store together. Hall asked to see some diamond rings. The clerk got a tray out of the show case and placed it on the counter. All three examined the rings, but Braxton said she'd like to see some white solitaire rings—apparently referring to platinum or white gold. The clerk went to a window to get such a tray, warning another member of the store staff to keep his eyes on the three. The clerk returned and the three looked at these solitaires. Sometime during the transaction, a fake ring was switched into the show case tray for a good ring of some $400 or more in value. Hall picked up one of the boxes saying that it was good enough and that they would go to the bank for some money and be back to purchase it. The box was put back

on the show case. All three left the store. It was about ten minutes to two p. m. The clerk discovered the substitution and he and another employee followed the three accused. At the corner of 1st South and Main Street the three separated—Harris and Braxton going west, while Hall went toward the bank, but apparently did not go in. (Braxton testified he did go in.) One clerk went after Hall, the other after Braxton and Harris. Each overtook his quarry. Hall denied knowing the other two accused. All three denied knowing anything about what had happened at the store. At the store, after denying knowledge of the ring, Harris put it back and suggested they call the matter off. At the police station Hall denied knowing anybody by the name of Harris at all, and stated that he had never set eyes on this man Harris before 1:30 that day; that he and Braxton had met Harris on a corner, where the latter was talking to a Chinese. He stated further that he wanted Harris to show him where the Cadillac Company was, but that Harris suggested they go into the jewelry store first; and that he had no money in the bank, but expected to borrow on the Buick he was driving, although it was already mortgaged.

Harris, the accomplice, testified for the State that at Ogden he had told Hall about the switching of rings; that at that time Hall didn't know that he was going to switch rings when they entered the jewelry store, but knew that he had come to Salt Lake for that purpose. He also testified to standing a little away from the others and when the clerk had gone for the solitaire rings making the switch of rings. He stated that he took the ring as they needed money and wanted to get some to go some other place. He used the word "we" and explained that he meant himself and Hall, but not Ann Braxton—that she didn't know anything about it, unless Hall told her; but later he showed her a good ring, and she laughed.

The defendant Hall testified: That he knew Harris for ten years or more—met him at Ogden the 5th, two days before the alleged offense—that they talked of rings that Harris wanted to get from a colored fellow called "Pickhandle." He

also testified to previous acquaintanceship and dealings with Ann Braxton and that the plan was to buy her a ring. They came to Salt Lake the night of the 6th but didn't see Pick-handle and went back; then Hall wanted to come to Salt Lake to see about the purchase of a Cadillac, and a sale of his Buick; that in Salt Lake he mentioned to Harris that he wanted to buy Braxton a ring so they went to the jewelry store; that he never discussed a switch of rings with Harris; that his wife's name is Alma Hall; that he and his wife owned property in Los Angeles; that he didn't know that Harris was going to switch rings when they entered the jewelry store; that he couldn't remember Harris' name except as Bill; and that that was what he told the police officer, and that Harris had come from Frisco; that when he entered the jewelry store he had ten dollars in his pocket.

The evidence clearly shows inconsistences in Hall's acts and statements. The jury, if they believed certain of these statements, were quite justified in believing that Hall did have a guilty knowledge of the transaction in the store when he participated in it. He was present; he did not go to the bank as he stated "they" would do; they separated soon after leaving the store; he denied knowing the others at all, when stopped by the clerk; he claimed to the police that his acquaintanceship with Harris—the other Negro arrested —dated only from meeting him just prior to entering the jewelry store about 1:30 p. m. standing on a corner talking to a Chinese; that Harris suggested they go into the store. Then on the witness stand he admitted he did know Harris as Bill for ten years and brought him to Salt Lake from Ogden, and that they went to the jewelry store because he wanted to buy Braxton a ring; that they had discussed rings before but not as Harris claimed. These are all facts which show an inconsistency in the stories that justifies an inference of fear of consequences, and a knowledge of wrong doing. Both at the store, and at the police station, a false ring was found like the one used by Harris. At the police station Braxton is said to have dropped the ring; in the store one was found by a customer right where defendants

had been standing. We cannot escape the conclusion that there is sufficient evidence to justify the verdict.

Hall predicates his appeal upon three propositions:

(1) Alleged error of the lower court in denying appellant's demurrer to the evidence or motion to dismiss which followed the prosecuting attorney's opening address to the jury;

(2) Alleged error in the court's failure to instruct the jury on the law applicable to the testimony of an accomplice; and

(3) Alleged error of the court in submitting the question of appellant's guilt to the jury. [Was there sufficient corroborating evidence to support Harris' testimony?]

The opening statement of the prosecuting attorney did not include all the enumerated facts; but that opening statement was not evidence. The court could have asked the prosecutor if what he had stated was all the evidence he had, and it is possible, if the answer had been in the affirmative, the matter could then have been settled by stipulation. This the court did not do, however, and the evidence as produced we have set out generally above. As to defendant's assignment No. 1, we see no error in the court's failure to take the steps suggested above. Furthermore we think the evidence submitted is clearly sufficient corroboration of the testimony of Harris, so defendant's assignment No. 3 must fail.

Now as to the failure of the court to instruct on the law applicable to the testimony of an accomplice. Our Code, section 105-32-18, U. C. A. 1943, prohibits the finding of an accused guilty upon the evidence of an accomplice unless that evidence is corroborated. It reads:

"A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient ,if it merely shows the commission of the offense or the circumstances thereof."

As indicated above there was sufficient corroborating evidence in the case so the question raised by assignment No. 2 is: Was the failure of the court to instruct the jury upon the necessity of corroborating evidence a prejudicial error?

Counsel for Hall at the trial in the lower court—who, incidentally, was not the counsel who perfected this appeal—submitted no requests for instructions nor did he take any exceptions to any instructions given by the lower court, nor to the court's refusal or failure to give any particular kind of an instruction.

Under the circumstances there is nothing for us to do but affirm the judgment of the lower court. It is so ordered.

McDONOUGH, C. J., and WADE, and LATIMER, JJ., concur.

WOLFE, Justice (concurring in the result).

I concur in the result. If the jury should have been instructed on the law applicable to the testimony of an accomplice, viz., Sec. 105-32-18, U. C. A. 1943, it is a sufficient answer to defendant's contention in that regard that there was no pointing out to the court of the omission to so instruct. Counsel, as an officer of the court, has the duty as a specialist on the case, which he should be, to point out a failure by the court to instruct on a salient material proposition of law. He is a back-stop in that regard. If he does not do so his client cannot afterward complain that the instructions were insufficient or incomplete.

However, I have a doubt as to whether the provisions of Sec. 105-32-18, U. C. A. 1943, should be brought to the attention of the jury. It certainly is for the court to say, in the first instance, whether there is corroborating evidence. If there is, the court will overrule a motion for nonsuit or for a directed verdict. But whether after that the court should instruct the jury, and thus place on it the sometimes difficult task of differentiating corroborating testimony from other testimony, presents to me a serious question. I recognize

that a good argument may be made, based on the peculiar wording of the statute, that the jury may believe the accomplice and disbelieve the corroborating testimony and therefore convict only on the testimony of an accomplice. Since the case in this regard turns on the failure to point out to the court by registering an exception a claimed failure to instruct on a material part of the law of the case, I need only signify my doubt as to the other point in order that it will not be assumed that it escaped notice and, more important, that it will not be hereafter argued that by implication this court held that an instruction as to the necessity for corroborating evidence was necessary.